UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 19-30430 |
| | ) | Chapter 7 |
| RODNEY ALLEN PINCKNEY, | ) | **NOTICE OF OPPORTUNITY FOR** |
| | ) | **HEARING** |
| | ) | (No Protest Notice: No Hearing Will Be Held |
| Debtor. | ) | Unless Request For Hearing is Filed) |

**TAKE NOTICE** that the Chapter 7 Trustee has filed a Motion to Establish Compensation Procedure for Professional *Nunc Pro Tunc*.  A copy of the motion is attached (without exhibits).   A full copy of the motion including exhibits can be found at www.ncwb.uscourts.gov.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to order relief sought in the motion, or if you want the Court to consider your views on the matter, then on or before **November 7, 2019**, you or your attorney must do three (3) things:

1.     **File with the Court a written response requesting that the Court hold a hearing and explaining your position.  File the response at:**

U.S. Bankruptcy Court, 401 West Trade Street, Room 111, Charlotte, NC 28202-1669.

If you mail your request to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

2.     **On or before the date stated above for written responses, you must also mail or fax a copy of your written request to:**

Heather W. Culp, Essex Richards, P.A., 1701 South Boulevard, Charlotte, NC 28203.

U.S. Bankruptcy Administrator, 402 West Trade St., Ste. 200, Charlotte, NC 28202-1669.

3.     **Attend the hearing scheduled for November 13, 2019, at 9:30 a.m.** at the United States Bankruptcy Court, 401 West Trade Street, Charlotte, North Carolina 28202.

If you or your attorney do not take these steps, **A HEARING WILL NOT BE HELD**, and the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

This the 22nd day of October, 2019.

Heather W. Culp
NC Bar No. 30386
Chapter 7 Trustee/Attorney for Trustee
Essex Richards, P.A.
1701 South Boulevard
Charlotte, NC 28203
Tel:  (704) 377-4300
Fax:  (704) 372-1357
E-mail:  hculp@essexrichards.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 19-30430 |
| | ) | |
| RODNEY ALLEN PINCKNEY, | ) | Chapter 7 |
| | ) | |
| _____Debtor._____ | ) | |

**MOTION TO ESTABLISH COMPENSATION PROCEDURE FOR PROFESSIONAL**
***NUNC PRO TUNC* TO OCTOBER 1, 2019**

Heather W. Culp, Trustee ("Movant") moves the Court for the entry of an order establishing compensation for property manager Brown & Glenn Realty Co., Inc. *nunc pro tunc* to October 1, 2019, and shows the following in support:

1.     Movant is the duly qualified and acting trustee in this case.

2.     On October 1, 2019, this Court entered an *Ex Parte* Order Granting Trustee's Application to Employ Property Manager [Dkt. 79], which authorizes her to employ Brown & Glenn Realty Co., Inc. as property manager for the following real estate that the Debtor owns and that are subject to residential leases for which tenants are paying rent:  101 Globe Street, Mount Holly, NC 28120; 6511 Old Mount Holly Road, Charlotte, NC 28214; and 415 Lakewood Avenue, Charlotte NC 28208 (collectively, "the Real Properties").

3.     Attached as <u>Exhibit A</u> and incorporated by reference is an Exclusive Property Management Agreement with Brown & Glenn for the management of the Real Properties.[1]  This includes a proposed commission to the property manager of 10% of gross rental income or $50, whichever is greater.  Movant is informed and believes that this proposed commission is the standard rate for the management of leased residential properties similar to the Real Properties.

4.     Also attached as <u>Exhibit B</u> and incorporated by reference is an Exclusive Property Management Agreement Addendum with Brown & Glenn for the management of the Real Properties.  The proposed compensation in this Addendum includes:

       a.     a 10% fee of all gross collections received, including security deposits applied to rent, repairs or other expenses, utility payments and fees and any payments by tenants for repairs, court costs, or other expenses;
       b.     a $5 monthly accounting and handling fee for each address managed for Movant in this case;
       c.     a leasing fee of 50% of the first full month's rent for any new lease or any able and willing prospective resident who has been approved;

---

[1] The Trustee's Ex Parte Application to Employ Property Manager sought authorization to employ a property manager for four properties, one of which is 8525 Hammonds St., Charlotte NC 28214.  The Trustee subsequently learned that this is the Debtor's primary residence, which he owns with his wife as tenants by the entireties. Therefore, Brown & Glenn will not be managing this property.

    d.  a lease renewal fee of $100 for each lease of a property which renews during the term of the Agreement;

    e.  a maintenance supervision fee of 5% if Brown & Glenn is asked to supervise work performed by others hired by Movant or on Movant's behalf;

    f.  a court appearance fee of $30 plus reimbursements for any court appearances;

    g.  a 3% charge of all rents due from all leases originated by Brown & Glenn for the remainder of each corresponding lease term where Movant terminates the Agreement during its term; and

    h.  consent to exclusively use Brown & Glenn Repairs & Maintenance Co., Inc. to coordinate and perform maintenance to the Real Properties.

  5.  Movant is informed and believes that the proposed terms in <u>Exhibit B</u> are reasonable and customary in the local property management industry and are the most efficient terms on which the Real Property can be managed and maintained.

  WHEREFORE, Movant respectfully requests that the Court enter an Order granting this motion and establishing Brown & Glenn's compensation for property management services to the estate, *nunc pro tunc* to October 1, 2019; and granting such other and further relief as may be just and proper.

  This the 22nd day of October, 2019.

_____
Heather W. Culp
NC Bar No. 30386
Chapter 7 Trustee/Attorney for the Trustee
Essex Richards, P.A.
1701 South Boulevard
Charlotte, NC 28203
Tel.:  (704) 377-4300
Fax:  (704) 372-1357
E-mail:  hculp@essexrichards.com

**Brown & Glenn Realty Co. Inc**
**1012 East Boulevard**
**Charlotte, NC 28203**
**Phone: 704-332-7734 Fax: 704-332-3431**
**www.brownandglenn.com**

### EXCLUSIVE PROPERTY MANAGEMENT AGREEMENT
Long-term Rental Property

This Exclusive Property Management Agreement is entered into by and between Heather W. Culp, Chapter 7 Trustee for Robert Allen Pinckney ("Owner") and **Brown & Glenn Realty Co., Inc.** ("Agent").

IN CONSIDERATION of the mutual covenants and promises set forth herein, Owner hereby contracts with Agent, and Agent hereby contracts with Owner, to lease and manage the property described below, as well as any other property Owner and Agent may from time to time agree in writing will be subject to this Agreement (the "Property"), in accordance with all applicable laws and regulations, upon the terms and conditions contained herein.

1. **Property.** City: _____Charlotte___, County: _____Mecklenburg_____

Street Address: 101 Globe St., Mount Holly, NC 28120; 6511 Old Mount Holly Road, Charlotte, NC 28214; and 415 Lakewood Avenue, Charlotte, NC 28208.
Other Description:_____,NC
2. **Duration of Agreement.** This Agreement shall be binding when it has been signed and dated below by Owner and Agent. It shall become effective on  **September 25, 2019**, and shall be for an initial term of **12 consecutive months** . NOT LESS THAN **30** DAYS PRIOR TO THE CONCLUSION OF THE INITIAL TERM, EITHER PARTY MAY NOTIFY THE OTHER PARTY IN WRITING OF ITS DESIRE TO TERMINATE THIS AGREEMENT, IN WHICH CASE IT SHALL TERMINATE AT THE CONCLUSION OF THE INITIAL TERM. IF NOT SO TERMINATED, THIS AGREEMENT SHALL AUTOMATICALLY RENEW FOR SUCCESSIVE TERMS OF  (30 Days) one month EACH UNLESS EITHER PARTY GIVES THE OTHER PARTY WRITTEN NOTICE OF ITS DESIRE TO TERMINATE THIS AGREEMENT AT LEAST **30** DAYS PRIOR TO THE CONCLUSION OF ANY SUCH RENEWAL TERM, IN WHICH CASE THIS AGREEMENT SHALL TERMINATE AT THE CONCLUSION OF SUCH TERM. If Owner terminates this Agreement within **120** days of its effective date, Owner shall pay Agent a termination fee of **(1/2) one half of the advertised rent or leased rent amount.**

3. **Agent's Fee.** For services performed hereunder, Owner shall compensate Agent in the following manner:

____: A fee equal to __ **10% (Ten)** _____ of gross rental income received on all rental agreements, or $ 50.00 per month per property, whichever is greater.

Other *(describe method of compensation):*

____: _____

__X__: **See Exclusive Property Management Agreement Addendum**

Agent may deduct Agent's Fee from gross receipts and collections received before remitting the balance of the receipts and collections to Owner. *Note:* No fees may be deducted from any tenant security deposit until the termination of the tenancy. Thereafter, any fees due Agent from Owner may be deducted from any portion of the security deposit due to Owner.

**REALTOR®**

Owner Initials _HWC_    Agent Initials _____

North Carolina Association of REALTORS. ,Inc.

STANDARD FORM 401
Revised 1/2009
© 7/2009

**EXHIBIT A**

4. **Other Fees:** Agent may charge tenants reasonable administrative fees permitted by law and retain any such fees, including but not limited to, fees to cover the costs of processing tenant rental applications. If, in Agent's discretion, tenant leases provide for late payment fees and/or returned check fees, such fees, when collected by Agent, shall belong to **Brown & Glenn Realty Co., Inc., Agent**. Fees for purposes covered under the Tenant Security Deposit Act will be collected, held and disbursed in accordance with paragraphs 7 and 8 of this Agreement.

5. **Authority and Responsibilities of Agent:** During the time this Agreement is in effect, Agent shall:
(a) Manage the Property to the best of Agent's ability, devoting thereto such time and attention as may be necessary;
(b) OFFER THE PROPERTY TO THE PUBLIC FOR LEASING IN COMPLIANCE WITH ALL STATE AND FEDERAL HOUSING LAWS, INCLUDING BUT NOT LIMITED TO, ANY STATE AND FEDERAL LAWS PROHIBITING DISCRIMINATION ON THE BASIS OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS;
(c) Use Agent's best efforts to solicit, secure and maintain tenants, including the authority to negotiate, execute, extend and renew leases in Owner's name for terms not in excess of **Twenty-four (24) months**;
(d) Collect all rentals and other charges and amounts due under tenant leases and give receipts for amounts so collected;
(e) Deliver to Owner within 45 days following the date of execution of any rental agreement an accounting which sets forth the name of the tenant, the rental rate and rents collected, and promptly provide a copy of any rental agreement to Owner upon reasonable request;
(f) Provide Owner monthly statements of all monies received and disbursed in connection with Agent's management of the Property, and remit to Owner rental proceeds collected, less any deductions authorized hereunder; provided: (1) this shall not constitute a guarantee by Agent for rental payments that Agent is unable to collect in the exercise of reasonable diligence; and (2) if, pursuant to this Agreement or required by law, Agent either has refunded or will refund in whole or in part any rental payments made by a tenant and previously remitted to Owner, Owner agrees to return same to Agent promptly upon Agent's demand;
(g) Make or cause to be made any repairs which, in Agent's opinion, may be necessary to preserve, maintain and protect the Property; provided, Agent may not make any repairs that exceed **$ 500.00** without prior approval of Owner, except that in the case of an emergency, Agent may, without prior approval, make whatever expenditures on behalf of Owner that are reasonably necessary to preserve the Property or prevent further damage from occurring;
(h) Answer tenant requests and complaints and perform the duties imposed upon Owner by tenant leases or any local, state or federal law or regulations, including the authority to purchase such supplies and hire such labor as may be necessary in Agent's opinion to accomplish any necessary repairs;
(i) Retain such amounts from Owner's rental proceeds as may be necessary from time to time to establish and maintain a fund on behalf of Owner in the amount of **$ up to 300.00 ,** from which Agent may pay expenses associated with the management and operation of the Property for which Owner is responsible hereunder;
(j) Negotiate partial refunds with tenants if, in Agent's reasonable opinion, the tenant's use and enjoyment of the Property has been or will be materially and adversely affected as a result of a defect in the condition of the Property (such as a repair to the electrical, plumbing, sanitary, heating or ventilating facilities or a major appliance that cannot be made reasonably and promptly);
(k) Institute and prosecute such proceedings in small claims court as may be necessary and advisable, in Agent's opinion, to recover rents and other sums due the Owner from tenants or to evict tenants and regain possession, including the authority, in Agent's discretion, to settle, compromise and release any and all such small claims proceedings; and

(l)

6. **Cooperation With/Compensation To Other Agents:** Agent has advised Owner of Agent's company policies regarding cooperation and the amount(s) of any compensation, if any, that will be offered to subagents, tenant agents or both. Owner authorizes Agent to *(Check ALL applicable authorizations)*:

_____ Cooperate with subagents representing only the Owner and offer them the following compensation:
_X_ Cooperate with tenant agents representing only the tenant and offer them the following compensation:
    **A commission of 10% of one month's rent or S50, whichever is greater.**
_____ Cooperate with and compensate agents from other firms according to the attached company policy.

**REALTOR®**

North Carolina Association of REALTORS. .Inc.

Owner Initials _____    Agent Initials _____

STANDARD FORM 401
Revised 1/2009
© 7/2009

Agent will promptly notify Owner if Agent offers compensation to a cooperating agent(s) that is different from that set forth above.

**7. Marketing.** Owner authorizes Agent to advertise the Property in such manner as may be appropriate in Agent's opinion, including the authority to: *(Check ALL applicable sections)*

__X__ place "For Rent" signs on the Property (where permitted by law and relevant covenants) and to remove other such signs.

__X__ submit pertinent information concerning the Property to any listing service of which Agent is a member or in which any of Agent's associates participates and to furnish to such listing service notice of all changes of information concerning the Property authorized in writing by Owner. Owner authorizes Agent, upon execution of a rental contract for the Property, to notify the listing service of the rental, and to disseminate rental information, including rental price, to the listing service, appraisers and real estate brokers.

__X__ advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Agent may decide.

__X__ display information about the Property on the Internet either directly or through a program of any listing service of which the Agent is a member or in which any of Agent's associates participates, and to authorize other firms who belong to any listing service of which the Agent is a member or in which any of Agent's associates participates to display information about the Property on the Internet in accordance with the listing service rules and regulations. *If Owner does not authorize Internet advertising as set forth above, Owner MUST complete an opt-out form in accordance with listing service rules. (NOTE: NCAR Form li105 may be used/or this purpose.)*

If Owner authorizes Internet Advertising as set forth above, Owner further authorizes the display of *(Check ALL applicable sections)*:

__X__ The address of the Property
__X__ Automated estimates of the market value of the Property
__X__ Third-party comments about the Property

**8. Responsibilities of Owner:** During the time this Agreement is in effect, Owner shall:

(a) Be responsible for all costs and expenses associated with the maintenance and operation of the Property in accordance with the requirements of tenant leases or any local, state or federal law or regulations, including but not limited to NC General Statutes Section 42-42, and advance to Agent such sums as may be necessary from time to time to pay such costs and expenses;

(b) Provide funds to Agent promptly upon Agent's request for any cost or expense for which Owner is responsible that Agent, in Agent's discretion, incurs on Owner's behalf, including but not limited to, the costs of advertising, emergency maintenance and repairs, utilities, property taxes, owners' association dues and assessments, court costs and attorney's fees; and further, pay interest at the rate of **One and a half percent ( 1.5 %)** per month on the amount of any outstanding balance thereof not paid to Agent within **15** days of Agent's written request therefore;

(c) NOT TAKE ANY ACTION OR ADOPT ANY POLICY THE EFFECT OF WHICH WOULD BE TO PREVENT AGENT FROM OFFERING THE PROPERTY FOR RENT IN COMPLIANCE WITH ALL APPLICABLE FEDERAL AND STATE LAWS AND REGULATIONS, INCLUDING BUT NOT LIMITED TO, THOSE LAWS AND REGULATIONS PROHIBITING DISCRIMINATION ON THE BASIS OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS IN THE LEASING OF THE PROPERTY;

(d) Carry, at Owner's expense, commercial general liability insurance (including products and completed operations coverage) against any and all claims or demands whatever arising out of, or in any way connected with, the operation, leasing and maintenance of the Property, which policies shall be written to the extent allowable so as to protect Agent in the same manner as Owner and which shall be in the minimum amounts of **$ 500,000.00** for each injury or death of one person in each accident or occurrence, and **$ 500,000.00** for property damage in each accident or occurrence; and provide at least annually· a copy of such insurance policy or policies to Agent upon Agent's request; Name of insurance agent: Trustee Insurance Agency telephone no.: **(877) 237-8167.**

(e) Indemnify and hold Agent harmless to the extent allowable by law from any and all costs, expenses, attorneys' fees, suits, liabilities, damages or claims for damages, including but not limited to, those arising out of any injury or death to any person or loss or damage to any property of any kind whatsoever and to whomsoever belonging, including Owner, in any way relating to the management of the Property by Agent or the performance or exercise of any duty, obligation or authority set forth herein or hereafter granted to Agent, except to the extent that such may be the result of gross negligence or willful or intentional misconduct by Agent; and

**REALTOR®**

North Carolina Association of REALTORS. .Inc.

Owner Initials _____    Agent Initials _____

STANDARD FORM 401
Revised 1/2009
© 7/2009

(f)

**9. Tenant Security Deposits.** Agent may, in Agent's discretion, require tenants to make security deposits in an amount permitted by law to secure tenants' lease obligations (such security deposits shall hereinafter be referred to as "Tenant Security Deposits"). If the Agent requires Tenant Security Deposits, they shall be placed in a trust account in Agent's name in a North Carolina bank or savings and loan association. Upon the commencement of this Agreement, Owner shall deliver to Agent a list of any current tenants who previously made Tenant Security Deposits under existing leases and the amounts thereof. Simultaneously therewith, any such Tenant Security Deposits shall be placed in a trust account in Agent's name in a North Carolina bank or savings and loan association, and shall thereafter be administered in accordance with this Agreement.

**10. Trust Account Interest.** Agent may, at Agent's discretion, place gross receipts and collections, including Tenant Security Deposits, in an interest bearing trust account in the name of Agent in an insured bank or savings and loan association in North Carolina. Interest on any such amounts shall belong to Brown & Glenn Realty Co., Inc, Agent (Owner or Agent), except that with respect to any Tenant Security Deposits, tenant leases shall specify, in Agent's discretion, whether such interest shall be payable to Owner or to the tenant. If the lease provides that such interest is payable to the tenant, Agent shall account for the interest in the manner set forth in such lease. If the lease provides that such interest is payable to Owner or as Owner directs, then such interest shall be paid to Owner or Agent as set forth above. Agent may remove any interest payable to Agent from the account at all times and with such frequency as is permitted under the terms of the account and as the law may require.

**11. Entry by Owner.** Owner agrees that neither Owner nor any third party acting at Owner's direction, shall enter the Property for any purpose whatsoever during any time that it is occupied by a tenant in the absence of reasonable notice to Agent or tenant and scheduling by Agent or tenant of an appropriate time for any such entry.

**12. Lead-Based Paint/Hazard Disclosure.** If the Property was built prior to 1978, Landlord understands that Landlord is required under 42 U.S.C. 4852(d) to disclose information about lead-based paint and lead-based paint hazards, and that Agent is required to ensure Landlord's compliance with said law. Landlord agrees to complete and sign a "Disclosure Of Information On Lead-Based Paint And Lead-Based Paint Hazards" form (NCAR Form #430-T), photocopies of which will be provided by Agent to prospective tenants. In the alternative, Landlord authorizes Agent, in Agent's discretion, to fulfill Landlord's disclosure obligations by completing and signing said form on Landlord's behalf based on information provided by Landlord to Agent.

**13. Duties on Termination.** Upon termination of this Agreement by either party, each shall take such steps as are necessary to settle all accounts between them, including, but not limited to, the following:

    (a) Agent shall promptly render to Owner all rents then on hand after having deducted there from any Agent's fees then due and amounts sufficient to cover all other outstanding expenditures of Agent incurred in connection with operating the Property;

    (b) Agent shall transfer any security deposits held by Agent to Owner or such other person or entity as Owner may designate in writing; provided, Owner understands and acknowledges that the Tenant Security Deposit Act requires Owner to either deposit any such deposits in a trust account with a licensed and insured bank or savings institution located in North Carolina, or furnish a bond from an insurance company licensed to do business in North Carolina;

    (c) Owner shall promptly pay to Agent any fees or amounts due the Agent under the Agreement and shall reimburse Agent for any expenditures made and outstanding at the time of termination;

    (d) Agent shall deliver to Owner copies of all tenant leases and other instruments entered into on behalf of Owner (Agent may retain copies of such leases and instruments for Agent's records); and

    (e) Owner shall notify all current tenants of the termination of this Agreement and transfer of any advance rents and security deposits to Owner.

**14. Sale of Property.** In the event Owner desires to sell the Property through Owner's own efforts or those of a firm other than Agent, Owner shall: (a) promptly notify Agent that the Property is for sale and, if applicable, disclose to Agent the name of the listing firm; and (b) promptly notify Agent if the Property goes under contract and disclose to Agent the agreed-upon closing date.

**15. Entire Agreement; Modification.** This Agreement contains the entire agreement of the parties and supercedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged herein. No amendment or modification to this Agreement shall be effective unless it is in writing and executed by all parties hereto.

**16. Non-Waiver of Default.** The failure of either party to insist, in anyone or more instances, on the performance of any term or condition of this Agreement shall not be construed as a waiver or relinquishment of any rights granted hereunder or of the future performance of any such term or condition, and the obligations of the non-performing party with respect thereto shall continue in full force and effect.

**17. Governing Law; Venue.** The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, and that in the event of a dispute, any legal action may only be instituted in the county where

**REALTOR®**

**R**

North Carolina Association of REALTORS, .Inc.

Owner Initials_____   Agent Initials_____

STANDARD FORM 401
Revised 1/2009
© 7/2009

the Property is located.

18. **Relationship of Parties.** Although Owner and Agent agree that they will actively and materially participate with each other on a regular basis in fulfilling their respective obligations hereunder, the parties intend for their relationship to be that of independent contractors, and nothing contained in this Agreement shall be construed to create a partnership or joint venture of any kind.

19. **Exclusivity.** Owner agrees that Agent shall be the exclusive rental agent for the Property, and that no other party, including Owner, shall offer the Property for rent during the time this Agreement is in effect. Any rent nevertheless received by Owner or any third party will be transferred to Agent and thereafter accounted for as if originally received by Agent, including the deduction there from of any fee due Agent hereunder.

20. **Default.** If either party defaults in the performance of any of its obligations hereunder, in addition to any other remedies provided herein or by applicable law, the non-defaulting party shall have the right to terminate this Agreement if, within thirty days after providing the defaulting party with written notice of the default and the intent to terminate, the default remains uncured.

21. **Costs in Event of Default.** If legal proceedings are brought by a party to enforce the terms, conditions or provisions of this Agreement, the prevailing party shall be entitled to recover all expenses (including, but not limited to, reasonable attorney fees, legal expenses and reasonable costs of collection) paid or incurred by such prevailing party in endeavoring to enforce the terms, conditions, or provisions of this Agreement and/or collect any amount owing in accordance with this Agreement.

22. **Authority to Enter into Agreement; Principal Contact.** Owner represents and warrants to Agent that Owner has full authority to enter into this Agreement, and that there is no other party with an interest in the Property whose joinder in this Agreement is necessary.   Heather W. Culp, Chapter 7 Trustee for Rodney Allen Pinckney        shall serve as Owner's principal contact for purposes of making all decisions and receiving all notices and rental payments contemplated by this Agreement, and all persons signing this Agreement as Owner hereby appoint either of said persons as Owner's agent and attorney-in-fact for the purposes set forth in this section.

23. **Notices.** Any notices required or permitted to be given hereunder shall be in writing and mailed by certified mail to the appropriate party at the party's address set forth below.

24. **Binding Nature of Agreement.** This Agreement shall be binding upon and inure to the benefit of the heirs, legal and personal representatives, successors and permitted assigns of the parties.

25. **Assignments by Agent; Change of Ownership.** Owner agrees that at any time during the term of this Agreement, Agent may either assign Agent's rights and responsibilities hereunder to another real estate agency, or transfer to another person or entity all or part of the ownership of Agent's real estate agency, and that in the event of any such assignment or transfer, this Agreement shall continue in full force and effect; provided, that any assignee or transferee must be licensed to engage in the business of real estate brokerage in the State of North Carolina. In the event of any such assignment or transfer, Owner may, in addition to all other termination rights hereunder, terminate this Agreement without cause on sixty (60) days' prior written notice to the assignee or transferee of Owner's intent to terminate this Agreement.

26. **Other Professional Services.** Owner acknowledges that Agent is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Owner at Owner's expense, including but not limited to an attorney, insurance agent, tax advisor, engineer, home inspector, environmental consultant, architect, or contractor. If Agent procures any such services at the request of Owner, Owner agrees that Agent shall incur no liability or responsibility in connection therewith.

27. **Addenda.** Any addenda to this Agreement are described in the following space and attached hereto:

   (a)

   (b)

   (c)

The parties agree that any such addenda shall constitute an integral part of this Agreement. In the event of a conflict between this Agreement and any such addenda, the terms of such addenda shall control.

**REALTOR®**

North Carolina Association of REALTORS, .Inc.

Owner initials_____   Agent Initials_____

STANDARD FORM 401
Revised 1/2009
© 7/2009

THE AGENT SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT
RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP, OR FAMILIAL STATUS OF
ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE
LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Owner _____ (SEAL) Date: 10/17/19

AGENT: **Brown & Glenn Realty Co., Inc.**
     [Name of real estate firm]

By: **Justin D. Faircloth, Individual license #179053**    .DATE: 10/21/19  *Subject to Bldg Ct appd*

    [Authorized Representative]

Real Estate Agency: **Brown & Glenn Realty Co., Inc.**

Address: 1012 East Boulevard, Charlotte, NC, 28203
Telephone: 704-332-7734 Fax: 704-332-3431
E-mail: jfaircloth@brownandglenn.com  (BIC) or
info@brownandglenn.com

Owner: Heather W. Culp, Chapter 7 Trustee for Rodney Allen Pinckney
Address: 1701 South Boulevard, Charlotte, NC 28203

Telephone: (704)377-4300    email: hculp@essexrichards.com    Tax ID _____

**REALTOR®**

North Carolina Association of REALTORS. .Inc.

Owner Initials_____   Agent Initials_____

STANDARD FORM 401
Revised 1/2009
© 7/2009

# BROWN & GLENN REALTY CO., Inc.
### 1012 EAST BLVD. CHARLOTTE, NC 28203. 704-332-7734

## EXCLUSIVE PROPERTY MANAGEMENT AGREEMENT ADDENDUM

THIS EXCLUSIVE PROPERTY MANAGEMENT AGREEMENT ADDENDUM (this "Management Addendum") is entered into contemporaneously with that certain Management Agreement (hereinafter defined), by and between OWNER (as more particularly defined in the Management Agreement, its successors or assigns hereinafter referred to herein, collectively as, the "Owner"), and AGENT (as more particularly defined in the Management Agreement, hereinafter referred to herein as the "Agent").

### *Statement of Purpose*

Contemporaneously herewith, Owner and Agent entered into that certain Exclusive Property Management Agreement (the "Management Agreement"), regarding Agent's leasing and managing real property owned by Owner as more particularly set forth in the Management Agreement (all real property for which Agent leases or manages on behalf of Owner during the Duration of Agreement as set forth in the Agreement, shall each and collectively, be the "Property").

The parties desire to modify the Management Agreement, as set forth herein, to incorporate additional conditions to the terms of the Management Agreement.

Defined terms used herein, to the extent not specifically defined herein, shall have the meanings as set forth in the Management Agreement.

### *Addendum*

The parties hereby agree to modify the Management Agreement as follows. It is acknowledged and agreed that the leasing and management of the Property shall be additionally governed by the following terms. The parties acknowledge and agree that this Management Addendum shall supplement language in the Management Agreement, except where this Management Addendum contradicts the Management Agreement, in which case this Management Addendum shall control.

1.    Paragraph 1. Property is hereby amended to add the following:

"At any time during the term of this Agreement, Owner may request that Agent add real property to this Agreement on which all the terms of this Agreement shall apply to said additional real property wherein the term 'Property' shall apply to all real property that Owner requests Agent to manage by contacting Agent *via* electronic mail or other written method and upon Agent's return confirmation to Owner and Owner's delivery of the key to said additional real property, said additional real property shall be deemed "Property" hereunder."

2.    Paragraph 3. Agent's Fee is hereby deleted in its entirety and replaced with the following:

3. Agent's Fee. For services performed hereunder, Owner shall pay to Agent, at Agent's address first above written, the following:

    (a) On the first day of each month, a management fee equal to _Ten_ percent (_10_%) of gross rental income received on all rental agreements, or $50.00 per month per rental agreement, whichever is greater; and

    (b) On the first day of each month, a fee of _Ten_ percent (_10_ %) of all gross collections received by Agent including, but not limited to, any security deposits applied to rent, repairs, or other expenses, utility payments and fees and any payments by tenants for repairs, court costs, or other expenses.

    (c) On the first day of each month, a $5.00 monthly accounting and handling fee may be charged, as determined by Agent, for each property address for which Agent manages on behalf of Owner.

    (d) If an owner chooses not to fix up a property for a period greater than thirty (30) days then the Agent may either terminate this Agreement or charge the Owner a monthly fee of $50.00 for managing any vacant property; and

---


EXHIBIT
B

(e) Due in connection with execution hereof, or upon adding another property to this Agreement, a leasing fee of fifty percent (50%) of the first full month's rent for any new lease or any able and willing prospective resident who has been approved for a property during the term of this Agreement. Owner further agrees to pay a lease renewal fee of $100.00 to Agent for each lease of a property which renews during the term of this Agreement; and

(f) As applicable during the term of this Agreement, Owner shall pay to Agent a maintenance supervision fee of five percent (5%) if Agent is asked to supervise work performed by others hired by the Owner, or on behalf of Owner such as by Owner's insurance company, including, but not limited to, labor and materials for normal maintenance repairs and for all capital improvements to the Property. Capital improvements include, but are not limited to, work performed costing over One Thousand and 00/100 dollars ($1,000.00), major construction, modernization, rehabilitation, and or fire or flood restoration;

(g) Owner shall pay to Agent a court appearance fee of $30.00 as well as reimburse Agent for any third party charges to perform such court appearances, including, but not limited to any transportation expenses, payment to third parties as witnesses, court costs or otherwise.

(h) Termination of this Agreement at any time within the Duration of Agreement and for any reason entitles Agent to all fees due pursuant to the terms of this Agreement, in addition to three percent (3%) of all rents due from all leases originated by Agent for the remainder of each corresponding lease term.

(i) In no event shall this Agreement terminate until all sums due to Agent have been paid to Agent including, but not limited to: repairs, advertising, utility bills, legal fees, fees for professional services, handling fees, etc., without Agent's written consent.

Agent may deduct Agent's Fee from gross receipts and collections received before remitting the balance of the receipts and collections to Owner or charge Owner's credit card on file as further provided herein. *Note:* No fees may be deducted from any tenant security deposit until the termination of the tenancy. Thereafter, any fees due Agent from Owner may be deducted from any portion of the security deposit due to Owner."

3.    The following provision is added to Paragraph 5. Authority and Responsibilities of Agent:

"(l) Maintenance Election:

(i)    By execution below and in connection with Section (g) of Paragraph 5, Owner hereby elects and consents to allow Agent to use Brown & Glenn Repairs and Maintenance Co., Inc. ("Maintenance Company") exclusively to coordinate and perform all maintenance to the Property. Owner hereby acknowledges and accepts that Maintenance Company and Agent have shareholders that may have a shareholder interest in both entities. Owner also acknowledges and accepts that Maintenance Company shall charge Owner customary expenses and fees of labor, materials, services, travel, and administrative as well as pass on any third party charges in connection with any maintenance. Owner also consents to allow Agent to receive and pay all invoices received by Maintenance Company but this does not limit the direct billing and request of payment or deposit by the Maintenance Company to Owner.

Consented to:

Owner: _Veatta W. Gay_
_Pec for Pinehurst_

Owner: _____

* Subject to
BK ct. approval

Brown & Glenn Repairs and Maintenance Co., Inc.,
a North Carolina corporation

By: _____
Justin D. Faircloth, President

(ii)   By execution below, Owner hereby elects to be solely responsible to make all repairs to the Property wherein Agent shall have no obligation to determine whether any repairs are needed, make any repairs or otherwise have any obligation with respect to maintenance or repair of the Property; provided Agent agrees to contact Owner to inform them that a tenant has contacted Agent regarding maintenance of the Property. Furthermore, Owner shall fully indemnify and hold harmless Agent, its successors, assigns and agents with respect to any and all costs (including court costs, cost of settlement), expenses, attorneys' fees, suits, liabilities, damages or claims for damages arising out of repairs or maintenance made as well as any and all costs (including court costs, cost of settlement), expenses, attorneys' fees, suits, liabilities, damages or claims for damages arising out of any repairs or maintenance not made as more specifically set forth in Section (e) of Paragraph 8.

Consent:

Owner: _____

Owner: _____

(m) To allow all prospective tenants and others, within the discretion of Agent, to enter upon or into the Property unaccompanied by Agent or its representative, and to provide such person with a key to any Property, provided such Property must be vacant and such person executed a Key Loan Agreement before receiving a key.

(n) Owner gives Agent the authority to hold all original leases on behalf of Owner and Owner acknowledges that Agent will retain all original copies when management services are terminated. Copies of leases and rent rolls will be provided to owner as hereinafter set forth.

(o) Owner agrees to allow Agent to hold monies on the account for up to sixty days (60) after the termination date in order to pay expenses incurred but not yet invoiced in order to close the accounts.

(p) Owner gives Agent the authority, but not the obligation, to enter upon the Property to conduct any inspections of the Property and suggest repairs without any liability for said inspections, suggestions or absence of any suggestion and if Owner chooses not to make any suggested repairs for a period greater than thirty (30) days than Agent may, as determined in its sole discretion, either terminate this Agreement or charge Owner, in addition to the other fees owed hereunder, the monthly fee of $50.00 for managing any vacant property

(q) Owner hereby grants Agent the authority, but not the obligation, to cause the utility company to activate utility service at the Property. Agent may cause activation to be held in the name of Agent or the name of Owner using any information provided by Owner (i.e. social security numbers), as determined by Agent. Owner agrees that it shall, within three (3) days of termination of this Agreement cause any utility service held in the name of Agent to be transferred and held in the name of Owner. Furthermore, Owner shall remit payment to Agent within fifteen (15) days of any invoice for any utility charges not paid by Owner."

4.     Section (e) of Paragraph 8. Responsibilities of Owner is hereby deleted in its entirety and replaced with the following:

(e) Indemnify and hold Agent, its successor and assigns, agents, contractors and other third parties working with Agent harmless and to indemnify said parties from any and all costs (including court costs, cost of settlement), expenses, attorneys' fees, suits, liabilities, damages or claims for damages, including but not limited to, those arising out of any injury or death to any person or loss or damage to the Property, any tenant, invitee or other party entering the Property, or for any neglect, abuse, damage to the Property by Tenant, vandals or any personal property of any kind whatsoever, whenever and to whomsoever belonging to Tenant or Owner, whether by vandalism or otherwise as well as any loss to Owner, its successors and assigns, agents, in any way relating to the Property, whether pursuant to the management or leasing of the Property by Agent or the performance or exercise of any duty, obligation or authority set forth herein or

hereafter granted to Agent (including, but not limited to any maintenance, inspections, or utility matters), or for Owner's failure to comply with the terms of this Agreement or make any repair or maintenance or by a misrepresentation hereunder, except to the extent that such may be the direct proximate result of gross negligence or willful or intentional misconduct by Agent."

5.    Paragraph 15. Entire Agreement; Modification is hereby amended to add the following:

Notwithstanding the foregoing, at any time, Agent may deliver written notice to Owner of a change in any fee or charge under this Agreement that shall be binding upon Owner and Agent without further modification or execution by the parties, unless Owner objects to said change in writing to Agent within no more than thirty (30) days of Owner's receipt of notice of said change, provided said objection shall not terminate this Agreement, but only omit said change from being incorporated herein.

6.    The following provisions are added to Paragraph 8. Responsibilities of Owner:

(f)  Owner shall pay within fifteen (15) days from request from Agent, its pro-rata cost for Agent providing Errors and Omissions Insurance covering the Property.

(g)  Owner shall name Agent as additional insured on its insurance policies and deliver the Certificate of Insurance with Agent as Certificate Holder (as acceptable to Agent in its sole discretion) to Agent within ten (10) days of execution of this Agreement.

(h)  Owner hereby represents and warrants that it is the sole owner of the fee simple interest in the Property and that it has full force and authority to enter into this Agreement and there are no further consents to cause this Agreement to be binding upon Owner and against the Property and execution hereof does not conflict with any other agreement to which Owner is a party thereto.

(i)  Owner hereby represents and warrants that it is in good standing and shall continue to comply with any matter of public record and shall remain in good standing with all parties associated with the same, including, but not limited to, payment of taxes, association dues, any loan or otherwise and immediately shall notify Agent of any failure to comply with the same, including immediately delivering to Agent any notices of non-compliance received from any party.

(j)  Owner hereby authorizes Agent to use that certain credit card on file with Agent for any emergency expenses incurred by Agent and Owner shall at all times keep said credit card authorization current with a valid effective credit card along with contact information for Owner other than at the Property and to include a third party contact on behalf of Owner."

7.    The following provision is added to Paragraph 20. Default:

Notwithstanding anything herein to the contrary, 'Owner shall not be allowed to terminate this Agreement until after it has delivered Agent written notice of a default and Agent has failed to commence to cure the same within thirty (30) days of its receipt of said written notice from Owner.

8.    Section (e) of Paragraph 25. Assignments by Agent; Change of Ownership is hereby deleted in its entirety and replaced with the following:

25. Assignments by Agent; Change of Ownership. Owner agrees that at any time during the term of this Agreement, Agent may, without the consent of Owner, as determined by Agent in its sole discretion, either assign Agent's rights and responsibilities hereunder to another real estate agency, or transfer to another person or entity all or part of the ownership of Agent's real estate agency, and that in the event of any such assignment or transfer, this Agreement shall continue in full force and effect; provided, that any assignee or transferee must be licensed to engage in the business of real estate brokerage in the State of North Carolina."

9.    This Management Addendum shall become a binding contract when signed by both Buyer and Seller. It may be signed in two counterparts with a signed counterpart being retained by each party hereto. All counterparts shall have the binding force and effect of an original.

**AGENT AND ATTORNEYS MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR**

ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA ATTORNEY BEFORE YOU SIGN THIS AGREEMENT. EACH PARTY HEREBY CONFIRMS THAT IT HAS ITS OWN INDEPENDENT LEGAL COUNSEL OR HAS WAIVED ITS RIGHTS TO THE SAME.

IN WITNESS WHEREOF, Agent and Owner have hereunto executed this Management Addendum as of the date of the Management Agreement.

**OWNER:**

Heather W. Culp, Chapter 7 Trustee
for Rodnew Allen Pinckney

By: _____ (SEAL)

Subject to
BU ct
approved

OR

_____

Printed Name: _____

Printed Name: _____

**AGENT:**

BROWN & GLENN REALTY CO., INC., a North Carolina Corporation

By: _____ (SEAL)
      Justin D. Faircloth, President

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2019, I electronically filed the foregoing **NOTICE OF OPPORTUNITY FOR HEARING and MOTION TO ESTABLISH COMPENSATION PROCEDURE FOR PROFESSIONAL *NUNC PRO TUNC* TO OCTOBER 1, 2019** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following parties:

Shelley K. Abel, U.S. Bankruptcy Administrator
Jeanne Ann Pennebaker, Attorney for the Debtor

I further certify that the foregoing **NOTICE OF OPPORTUNITY FOR HEARING and MOTION TO ESTABLISH COMPENSATION PROCEDURE FOR PROFESSIONAL *NUNC PRO TUNC* TO OCTOBER 1, 2019 (without Exhibits A and B)** were served on the following parties listed below by mailing a copy of the same in an envelope addressed to each party with proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Postal Service on October 22, 2019:

Brown & Glenn Realty Co., Inc.
ATTN: Justin D. Faircloth
1012 East Blvd.
Charlotte NC 28203

All on attached matrix

_____
Heather W. Culp
NC Bar No. 30386
Chapter 7 Trustee/Attorney for the Trustee
Essex Richards, P.A.
1701 South Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
E-mail: hculp@essexrichards.com

4

Label Matrix for local noticing
0419-3
Case 19-30430
Western District of North Carolina
Charlotte
Mon Oct 21 10:52:34 EDT 2019

Edward P. Bowers
Middlesworth, Bowers & Co., LLP
219-A Wilmot Dr.
Gastonia, NC 28054-4048

Heather Culp
1701 South Blvd
Charlotte, NC 28203-4727

First Citizens Bank
1024 Alleghany St
Charlotte, NC 28208-3890

(p)FIRST CITIZENS BANK TRUST COMPANY
P O BOX 25187
RALEIGH NC 27611-5187

Ford Motor Credit
PO Box 542000
Omaha, NE 68154-8000

(p)FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180

Ford Motor Credit Company LLC
c/o Pamela P. Keenan
2418 Blue Ridge Road, Suite 200
Post Office Box 19766
Raleigh, NC 27619-9766

Gaston Radiology
PO Box 603498
Charlotte, NC 28260-3498

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Marlene Jones
c/o Robert H. Pryor
McGuireWoods LLP
PO Box 31247
Charlotte, NC 28231-1247

Pamela P. Keenan
Kirschbaum, Nanney, Keenan & Griffin
2418 Blue Ridge Road, Suite 200
Post Office Box 19766
Raleigh, NC 27619-9766

Marlene Jones
8418 Galena View Drive
Charlotte, NC 28269-7178

Marlene Jones
c/o Luke P Sbarra
6000 Fairview Rd Ste 1000
Charlotte, NC 28210-3353

Mecklenburg County Tax Collector
PO Box 71063
Charlotte, NC 28272-1063

Mecklenburg Radiology Associates
PO Box 221249
Charlotte, NC 28222-1249

North Carolina Department of Revenue
Bankruptcy Unit
P.O. Box 1168
Raleigh, NC 27602-1168

Novant Health
PO Box 1123
Minneapolis, MN 55440-1123

Office of the Tax Collector
Mecklenburg County Tax Collector
P.O. Box 31637
Charlotte, NC 28231
Charlotte, NC 28231-1637

Jeanne Ann Pennebaker
Bochicchio & Pennebaker, PLLC
10130 Perimeter Parkway
Suite 200
Charlotte, NC 28216-0197

Rodney Allen Pinckney
2101 A Ave.
Charlotte, NC 28216-3702

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Presbyterian Pathology group
PO Box 4370
Florence, SC 29502-4370

Robert H. Pryor
McGuireWoods LLP
P.O. Box 31247
Charlotte, NC 28231-1247

Robert H. Pryor
Marlene Jones
8418 Galena View Drive
Charlotte, NC 28269-7178

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

United States Attorney
227 West Trade Street
Carillon Bldg, Suite 1700
Charlotte, NC 28202-1675

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

First-Citizens Bank & Trust Company
Attn: Bankruptcy Department
PO Box 25187
Raleigh, NC 27611-5187

Ford Motor Credit Company
P.O. Box 62180
Colorado Springs, CO 80962

Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Brown & Glenn Realty Co., Inc.

(d)Heather Culp
1701 South Blvd
Charlotte, NC 28203-4727

(u)Essex Richards, P.A.

(u)Ford Motor Credit Company LLC

(u)Middleswarth, Bowers & Co., LLP

End of Label Matrix
Mailable recipients    26
Bypassed recipients     5
Total                  31